Loris Melvin **GARNER**, Jr., Appellant,

v.

**FURMANITE AUSTRALIA PTY., LTD. and Tony Backhouse, Appellees.**

No. 01–97–00247–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 2, 1998.

---

Thomas C. Hall, Houston, for appellant.

Christopher W. Martin, Houston, for appellees.

Before SCHNEIDER, C.J., and HEDGES and NUCHI, JJ.

## OPINION

HEDGES, Justice.

Appellant was injured in an industrial accident involving a milling machine while working in Abu Dhabi, United Arab Emirates. He sued appellees Furmanite Australia Pty., Ltd. (Furmanite) and Tony Backhouse alleging that they were strictly liable in tort because they designed, marketed, and manufactured the milling machine which caused his injuries. Appellant alleges that this machine was defective and unreasonably dangerous. Appellees filed a joint special appearance and plea to the jurisdiction alleging that because both were residents of Australia, Texas courts did not have personal jurisdiction over them. The trial court granted appellees' special appearances and dismissed the causes of action against them. In one point of error, appellant alleges that the trial court erred in granting the appellees' special appearance. We affirm.

## STATEMENT OF FACTS

Appellant Garner worked for Self Leveling Machines, Inc. (SLM), a Texas corporation. SLM entered into a contract with Sofec to perform precision milling work in Abu Dhabi. SLM sent Garner, a resident of Louisiana, to Abu Dhabi to work on the Sofec contract. While operating a specialized milling machine, the machine quickly rebounded in reverse, trapping Garner's knee and severely injuring him. In his pleadings, Garner alleged that the milling machine was designed, marketed, and manufactured by Furmanite and Backhouse.

The milling machine was owned by Self Leveling Machines Australia Pty., Ltd. (SLM Australia). SLM Australia is a private Australian corporation and the parent corporation of SLM. The machine was shipped directly from England to Abu Dhabi to be used in the Sofec contract. The machine was originally designed and manufactured by Furmanite, who transferred the machine to SLM Australia approximately two years before the accident. Furmanite has never marketed the machine for sale in Texas or anywhere else.

Backhouse is a citizen and resident of Australia. He is an employee of Furmanite and holds patents on the milling machine jointly with Furmanite. Backhouse was involved in the investigation of Garner's accident in his capacity as an employee of Furmanite. In that capacity, Backhouse made eight to ten visits to Texas in the five years before the injury, and spent about 60 days in Texas, of which 40 days were in the last two years. Backhouse was involved in training employees of SLM. Although he is Engineering Director for SLM, he was not compensated directly by SLM. Furmanite billed SLM for Backhouse's services and received payment for those services.

Backhouse is the settlor for the Backhouse Family Trust, an Australian trust. The trust owns 100% of Sierra Nominees, an Australian limited company. Sierra Nominees in turn owns 87½% of SLM Australia, which owns 100% of the stock in SLM. Sierra Nominees also owns 85% of Furmanite.

## PERSONAL JURISDICTION

In his sole point of error, appellant alleges that the trial court erred by granting Furmanite's and Backhouse's special appearance. Appellant alleges that (1) Furmanite and Backhouse purposefully availed themselves of the Texas forum, (2) either appellant's cause of action arose out of transaction conducted in Texas or Furmanite and Backhouse have systematic and continuous contact with Texas; and (3) the assumption of jurisdiction by Texas over appellees comports with traditional notions of fair play and substantial justice. To support his claim, appellant alleges the following facts: [1]

(1) Backhouse invented the milling machine and he and Furmanite own the patents to the machine;

(2) Backhouse visited Texas eight to ten times in the five years before appellant's injury, and he spent 40 days in Texas in the two years before accident;

(3) SLM and Furmanite are indirectly owned primarily by Backhouse;

(4) Backhouse trained SLM employees;

(5) Backhouse used SLM offices in Texas to conduct business for SLM;

(6) While in Texas, Backhouse was involved in negotiating the contract with Sofec.

Appellant argues that these facts are sufficient to establish that Furmanite and Backhouse were "doing business" in Texas as defined in TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986).[2] He also argues

---

1. These allegations are found in the sworn response to the special appearance by Tony Backhouse and Furmanite Australia. Allegations five and six were controverted by appellees.

2. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986) states:
    In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;
(2) commits a tort in whole or in part in this state; or
(3) recruits Texas residents, directly or indirectly or through an intermediary located in this state, for employment inside or outside this state.

that there were sufficient minimum contacts to satisfy due process concerns under either "specific" jurisdiction or "general" jurisdiction as defined by *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990).

Appellant contends that Backhouse and Furmanite satisfy the requirement of sufficient minimum contacts with the forum state so as to subject them to personal jurisdiction in Texas. Specifically, he points to Backhouse's eight to ten trips to Texas over the prior five years, his spending 40 days in Texas in the years before the injury, his using SLM offices in Texas, and his training of SLM employees. Appellant concludes by summarily stating that it is clear that appellees did not negate all bases of personal jurisdiction.

**Standard of Review**

■■■ On appeal from a special appearance, we review all evidence in the record to determine if the nonresident defendant negated all possible grounds for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985); *James v. Illinois Central R.R.*, 965 S.W.2d 594 (Tex. App.—Houston [1st Dist.] 1998, n.w.h.). Existence of personal jurisdiction is a question of law. *James*, 965 S.W.2d at 594. When, as here, the trial court does not file findings of fact in a special appearance, all questions of fact are presumed to support the judgment. *Hawsey v. Louisiana Dep't of Soc. Servs.*, 934 S.W.2d 723, 725 (Tex.App.—Houston [1st Dist.] 1996, writ denied). However, a trial court's conclusions of law are reviewed de novo. *Billingsley Parts & Equip., Inc. v. Vose*, 881 S.W.2d 165, 169 (Tex.App.—Houston [1st Dist.] 1994, writ denied). To sustain a special appearance, the nonresident defendant must negate all bases of personal jurisdiction. *C.S.R. Ltd. v. Link*, 925 S.W.2d 591, 596 (Tex.1996).

■■■ For Texas courts to exercise jurisdiction over a nonresident defendant, the Texas long-arm statute must authorize the exercise of jurisdiction, and the exercise of that jurisdiction must be consistent with federal and state guarantees of due process. *Schlobohm*, 784 S.W.2d at 356. The Texas

long-arm statute authorized the exercise of jurisdiction over nonresidents who do business in Texas. Tex. Civ. Prac. & Rem.Code Ann. § 17.042 (Vernon 1986). Finally, the Texas long-arm statute reaches as far as the federal and state constitutional guarantees of due process allow. *C.S.R. Ltd.*, 925 S.W.2d at 594.

The Texas long-arm statute has three requirements, as defined in *Schlobohm*, 784 S.W.2d at 358:

(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state;

(2) The cause of action must arise from, or be connected with such act or transaction. Even if the cause of action does not arise from a specific contact, jurisdiction may be exercised if the defendant's contacts with Texas are continuing and systematic.

(3) The assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

*Schlobohm*, 784 S.W.2d at 358.

■■■ Personal jurisdiction can be either "specific" or "general." *C.S.R. Ltd.*, 925 S.W.2d at 594. "Specific" jurisdiction occurs when the cause of action arises out of the defendant's minimum contacts with the forum state. *Id.* "General" jurisdiction occurs when a nonresident defendant's contacts are continuous and systematic, allowing the forum state to exercise jurisdiction over the defendant even if the cause of action did not arise out of the contacts with the state. *Id.* "General" jurisdiction requires more substantial contact with the forum state. *Id.* After determining that the nonresident defendant has satisfied the minimum contacts requirement, the second part of the constitutional test requires that the maintenance of the suit would not offend "traditional notions of fair play and substantial justice." *Id.*

## Minimum Contacts

The first two prongs of the *Schlobohm* test apply to the minimum contacts analysis. *Schlobohm*, 784 S.W.2d at 358. A nonresident defendant has sufficient minimum contacts if it has purposely availed itself of the benefits and protections of conducting business within that state. *CSR Ltd.*, 925 S.W.2d at 594–95. This limitation prevents defendants from being brought into Texas courts based upon random, fortuitous, or attenuated contacts, or the unilateral activity of another party. *Id.* at 595. Based upon its contact with the state, the defendant must reasonably expect to be haled into a Texas court. *Project Eng'g USA Corp. v. Gator Hawk, Inc.*, 833 S.W.2d 716, 721 (Tex. App.—Houston [1st Dist.] 1992, no writ). Minimum contacts are especially important when dealing with a nonresident defendant from a foreign country. *C.S.R. Ltd.*, 925 S.W.2d at 595.

Given the facts of the present case, appellees are not subject to "specific" jurisdiction in Texas. Appellant's cause of action did not arise out of Furmanite's or Backhouse's contacts with Texas. Although he argues that Backhouse assisted SLM in obtaining the contract with Sofec which ultimately resulted in his injury, the contract was negotiated between SLM and Sofec exclusively. Backhouse's conversations with SLM regarding the contract did not take place in Texas. Appellant's cause of action arises out of the defective design of the machine, not out of the contract. Therefore, appellant has not established that Furmanite and Backhouse are subject to "specific" jurisdiction in a Texas court.

Similarly, Backhouse is not subject to "general" jurisdiction in Texas, because his contact with Texas was not continuous and systematic. Backhouse's trips to Texas are insufficient to establish personal jurisdiction over him in his personal capacity. Mere travel to Texas is insufficient to establish continuous and systematic contact with the forum state. *Holt Oil & Gas v. Harvey*, 801 F.2d 773, 779 (5th Cir.1986). The "fiduciary shield" doctrine protects an employee of a company from personal jurisdiction when the employee's actions have been on behalf of his employer. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir.1985).

Nor is Furmanite subject to "general" jurisdiction in Texas. To hold a foreign parent corporation subject to personal jurisdiction on the basis of the activity of one of its subsidiaries, there must a showing of control by the parent which is greater than normal or that it acted as the "alter ego" of the corporation. *Conner v. Conti-Carriers and Terminals, Inc.*, 944 S.W.2d 405, 418–19 (Tex.App.—Houston [14th Dist.] 1997, no writ). In this case, Furmanite is not the parent company of SLM, only an affiliated company with common owners. Therefore, neither Furmanite nor Backhouse are subject to "general" jurisdiction in Texas.

## Fair Play and Substantial Justice

Even if Backhouse and Furmanite had minimum contacts with Texas sufficient to establish jurisdiction, fair play and substantial justice would require the court to grant their special appearances. The primary goal of the due process clause as it relates to personal jurisdiction is fairness to foreign defendants. *Schlobohm*, 784 S.W.2d at 357. Requiring Australian citizens and residents to have to defend this suit in Texas when their contacts with the forum were slight and not related to appellant's causes of action does not comport with traditional notions of fair play and substantial justice. *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1265, n. 4 (5th Cir.1981). Appellant was a resident of Louisiana, the injuries occurred in Abu Dhabi, the machine was manufactured in Australia, and the machine was shipped directly from England. It would not be fair and just to hold appellees accountable in Texas under these circumstances.

We overrule appellant's sole point of error.

We affirm the trial court's judgment.