Opinion issued June 20, 2002







 







In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00465-CV






KATHLEEN FRAWLEY CULLEN AND DANIEL FRAWLEY, Appellants


V.


POLY-LINE, L.L.C. AND JASON STEED, Appellees






On Appeal from the 164th District Court

Harris County, Texas

Trial Court Cause No. 99-45155






O P I N I O N


 This is an accelerated, interlocutory appeal from the trial court's order denying
the special appearances filed by appellants, Kathleen Frawley Cullen (Cullen) and
Daniel Frawley (Frawley). See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7)
(Vernon Supp. 2002). Cullen and Frawley, who are siblings and residents of Illinois,
argue the trial court erred in denying their special appearances because any contacts
they may have had with Texas were solely in their capacities as officers and directors
of Frawley Trading Corporation (Frawley Trading) and Polyliner, Inc. (Polyliner) and
such contacts were protected under the fiduciary shield doctrine. Frawley Trading
and Polyliner, defendants below, do not appeal the trial court's denial of their
respective special appearances. We affirm.

Factual and Procedural Background

 Poly-Line, L.L.C. (Poly-Line), (1) a Texas corporation, is in the business of
selling resin, in the form of plastic pellets, to brokers and manufacturers in the
plastics industry. Jason Steed, an independent broker working on behalf of Poly-Line, brokered the sale of several shipments of plastic resin to Frawley Trading and
Polyliner, whose principal places of business are in Illinois. The instant claims arise
out of Polyliner's purchase of several railcars of resin from Poly-Line.

 In July 1999, Polyliner placed purchase orders for two railcars of resin. Steed
told Cullen that Poly-Line would not release the two new orders of resin if Polyliner
did not pay the amounts owed for three prior orders. Cullen advised Steed she would
send a check by express mail to pay for the three unpaid orders. Cullen prepared and
left a sealed express mail package with Erin Magnuson, an employee of Frawley
Trading and Polyliner. Magnuson gave the envelope to Steed, and Steed mailed it to
Poly-Line's office in Houston. Based on Cullen's apparent payment, Poly-Line
released the two new orders of resin. However, when a representative of Poly-Line
opened the package from Cullen, it was empty.

 After repeated attempts to contact Cullen, Steed eventually spoke with her. 
Cullen told Steed that she had forgotten to place the check in the envelope. Steed
claims Cullen admitted she forgot to send payment to Poly-Line's Houston office and
told Steed and Poly-Line to contact Frawley and Frawley Trading to secure payment. 
Frawley, on behalf of Frawley Trading, orally agreed with Steed to pay Poly-Line for
the outstanding invoices; however, Poly-Line again received no payments. Steed
attempted to contact Frawley, without success. Magnuson later told Steed that
Frawley had sent payment by express mail, but an express mail package from Frawley
never arrived. Magnuson then told Steed payment had been sent by regular mail. 
Poly-Line did not receive any of the promised payments from either Cullen, Frawley,
Frawley Trading or Polyliner.

 Poly-Line sought further assurances of payment by Polyliner on a total of seven 
shipments, and, when none were received, Poly-Line placed a hold on those
shipments then in possession of CSS - Chicago Southshore, a common rail carrier. 
Poly-Line and Steed claim Polyliner then falsely represented itself as Poly-Line to
successfully gain the unauthorized release of the shipments from the carrier. The
unpaid, outstanding value of the total shipments received by Polyliner and Frawley
Trading was $486,315. Poly-Line and Steed brought suit against Cullen, Frawley,
Frawley Trading, and Polyliner for fraud, conversion, and as a suit on a sworn
account based on the sales of resin. They also seek punitive damages of $1,000,000
based on their fraud claim.

 As evidence in support of their special appearances, Cullen and Frawley
presented their affidavits. Cullen's affidavit stated she: (1) is an Illinois resident, (2)
has never owned or leased real estate in Texas, (3) has never paid taxes in Texas, (4)
has never voted in Texas, (5) has never registered a vehicle in Texas, and (6) has
never filed suit in Texas. Frawley's affidavit stated he, like Cullen, did not have any
contacts with Texas. The trial court denied the special appearance as to all
defendants. The defendants requested, but the trial court did not prepare, findings of
fact and conclusions of law.

Standard of Review

 The burden of proof is on a nonresident who files a special appearance to
negate all possible grounds for personal jurisdiction. Garner v. Furmanite Australia
Pty., Ltd., 966 S.W.2d 798, 802 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). 
Existence of personal jurisdiction is a question of law, but that determination must
sometimes be preceded by the resolution of underlying factual disputes. James v. Ill.
Cent. R.R. Co., 965 S.W.2d 594, 596 (Tex. App.--Houston [1st Dist.] 1998, no pet.). 
 When no findings of fact have been made, as in this case, all factual disputes are
presumed to be resolved in support of the trial court's order. Garner, 966 S.W.2d at
802. While we generally review for factual sufficiency, we review de novo if the
underlying facts are undisputed or otherwise established. C-Loc Retention Sys., Inc.
v. Hendrix, 993 S.W.2d 473, 476 (Tex. App.--Houston [14th Dist.] 1999, no pet.).

Jurisdiction

 Rule 120a(1) allows a party to appear specially, without making a general
appearance, to object to the court's exercise of jurisdiction over it, "on the ground that
such party or property is not amenable to process issued by the courts of this State." 
Tex. R. Civ. P. 120a(1); Abacan Technical Servs. Ltd. v. Global Marine Int'l Servs.
Corp., 994 S.W.2d 839, 843 (Tex. App.--Houston [1st Dist.] 1999, no pet.). A court
may assert personal jurisdiction over a nonresident defendant only if the requirements
of both the Texas long-arm statute (2)
 and the Fourteenth Amendment's due process
clause (3) are satisfied. CSR, Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996) (orig.
proceeding); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414,
104 S. Ct. 1868, 1872 (1984).

 The Texas long-arm statute reaches as far as the federal and state constitutional
guarantees of due process allow. Garner, 966 S.W.2d at 802. The Texas long-arm
statute allows a court to exercise personal jurisdiction over a nonresident defendant
who does business in Texas. Tex. Civ. Prac. & Rem. Code Ann. § 17.042. 

 A nonresident does business in Texas if it:

 (1) contracts by mail or otherwise with a Texas resident and either
party is to perform the contract in whole or in part in this state; 


 (2) commits a tort in whole or in part in this state; or


 (3) recruits Texas residents, directly or through an intermediary
located in this state, for employment inside or outside this state.


Id. The Texas Supreme Court has repeatedly interpreted this broad statutory language
"to reach as far as the federal constitutional requirements of due process will allow." 
CSR, 925 S.W.2d at 594. Therefore, the requirements of the Texas long-arm statute
are satisfied if the exercise of personal jurisdiction comports with federal due process
limitations. Id.

 The United States Constitution permits a state to exert personal jurisdiction
over a nonresident defendant only if the defendant has some minimum, purposeful
contacts with the state, and the exercise of jurisdiction will not offend traditional
notions of fair play and substantial justice. Dawson-Austin v. Austin, 968 S.W.2d
319, 326 (Tex. 1998). A nonresident who has purposefully availed himself of the
privileges and benefits of conducting business in the foreign jurisdiction has
sufficient contacts with the forum to confer personal jurisdiction. CSR, 925 S.W.2d
at 594; Garner, 966 S.W.2d at 803. A defendant, however, should not be subject to
the jurisdiction of a foreign court based upon random, fortuitous, or attenuated
contacts. CSR, 925 S.W.2d at 595.

 A nonresident defendant must have purposefully established such minimum
contacts with the forum that it could reasonably anticipate being sued there. Burger
King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985). It is the
quality and nature of the contacts, rather than their number, that is important. 
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815 S.W.2d
223, 230 n.11 (Tex. 1991).

 A defendant's contacts with a forum can give rise to either general or specific
jurisdiction. Id. at 227. Specific jurisdiction is established if the defendant's alleged
liability arises from, or is related to, an activity conducted within the forum. Id.
When specific jurisdiction is asserted, the minimum contacts analysis focuses on the
relationship between the defendant, the forum, and the litigation. Mem'l Hosp. Sys.
v. Fisher Ins. Agency, Inc., 835 S.W.2d 645, 650 (Tex. App.--Houston [14th Dist.]
1992, no writ).

 The exercise of personal jurisdiction is proper when the contacts proximately
result from actions of the nonresident defendant which create a substantial connection
with the forum state. Guardian Royal, 815 S.W.2d at 226. The substantial
connection between the nonresident defendant and the forum state necessary for a
finding of minimum contacts must come about by action or conduct of the
nonresident purposefully directed toward the forum state. Id. This requirement that
a defendant purposefully avail himself of the privilege of conducting activities within
the forum state, thus invoking the benefits and protections of its laws, ensures that a
defendant will not be haled into a jurisdiction solely as a result of random, fortuitous,
or attenuated contacts, or of the unilateral activity of another party or a third person. 
Burger King, 471 U.S. at 475, 105 S. Ct. at 2183; Garner, 966 S.W.2d at 803.

 Foreseeability is an important consideration in deciding whether the
nonresident has purposefully established minimum contacts with the forum state. 
Burger King, 471 U.S. at 475, 105 S. Ct. at 2183; Guardian Royal, 815 S.W.2d at
227. The concept of foreseeability is implicit in the requirement that there be a
substantial connection between the nonresident defendant and Texas arising from
actions or conduct of the nonresident defendant purposefully directed toward Texas. 
Guardian Royal, 815 S.W.2d at 227. If a tortfeasor knows that the brunt of the injury
will be felt by a particular resident in the forum state, he must reasonably anticipate
being haled into court there to answer for his actions. Mem'l Hosp. Sys., 835 S.W.2d
at 650.

Specific Jurisdiction

 Cullen and Frawley argue there is no basis for the assertion of specific
jurisdiction over them. We disagree. 

Cullen's and Frawley's Contacts

 Poly-Line and Steed have alleged Cullen committed fraud by promising
payment for the outstanding invoices to induce the release of additional orders of
resin. The elements of fraud are: (1) a material misrepresentation, (2) that was either
known to be false when made or was asserted without knowledge of its truth, (3)
which was intended to be acted upon, (4) which was relied upon, and (5) which
caused injury. Formosa Plastics Corp. USA v. Presidio Eng'rs and Contractors, Inc.,
960 S.W.2d 41, 47 (Tex. 1998). A promise of future performance constitutes an
actionable misrepresentation if the promise was made with no intention of performing
at the time it was made. Formosa, 960 S.W.2d at 48.

 In determining whether the trial court has jurisdiction over Cullen and Frawley
based on their alleged commission of a tort, we examine only the necessary
jurisdictional facts and do not reach the merits of the case. Arterbury v. Amer. Bank
& Trust Co., 553 S.W.2d 943 (Tex. App.--Texarkana 1977, no writ).

 Steed's affidavit forms the basis of appellees's fraud claim. It states: (1) Cullen
said she would send a check to pay for three outstanding invoices in order to have a
fourth rail car of resin released to Polyliner; (2) Magnuson told Steed that Cullen had
prepared the package; (3) the express mail package was empty when received and
opened at Poly-Line's Houston office; (4) Cullen told Steed she forgot to place the
check in the envelope; (5) Cullen ignored Steed's phone calls after Poly-Line
determined Cullen had not mailed the payment; and, (6) two weeks after Cullen's
promise to send payment, Cullen told Steed that Polyliner could not pay the
outstanding invoices.

 Cullen makes several arguments as to why she is not subject to jurisdiction in
Texas. Initially, she argues that, under the fiduciary shield doctrine, she is not subject
to jurisdiction in Texas because her contacts were made in the capacity of an officer
of Frawley Trading and Polyliner. The fiduciary shield doctrine protects owners,
officers, and directors from personal jurisdiction when that person makes contacts
with Texas on behalf of the corporation. Garner, 966 S.W.2d at 803 (citing Stuart
v. Spademan, 772 F.2d 1185, 1197 (5th Cir. 1985)). Courts have recognized two
exceptions to the fiduciary shield doctrine. Stuart, 772 F.2d at 1197. The doctrine
may be disregarded when the corporation is the "alter ego" of the officer. Id. at 1199. 
The doctrine may also be disregarded when an officer is alleged to have committed
an intentional tort directed at the forum state. See, e.g., Calder v. Jones, 465 U.S.
783, 790, 104 S. Ct. 1482, 1487 (1984); Stuart, 772 F.2d at 1197; D.J. Inv., Inc. v.
Metzeler Motorcycle Tire Agent Gregg, Inc., 754 F.2d 1185, 1192 (5th Cir. 1985);
Gen. Elec. v. Brown & Ross Int'l Distrib., 804 S.W.2d 527, 532 (Tex. App.--Houston
[1st Dist.] 1990, writ denied) (holding officers who personally arranged theft of
design plans, ordered counterfeit and mislabeled parts, and made misrepresentations
to customers were subject to personal jurisdiction in Texas). We conclude that, given
the facts of this case, the fiduciary shield doctrine does not preclude the assertion of
personal jurisdiction over Cullen because Steed and Poly-Line have specifically
alleged Cullen's actions were fraudulent.

 Cullen argues this evidence is insufficient to demonstrate fraud because (1)
Steed's affidavit regarding Magnuson's statements to him constituted inadmissible
hearsay; (2) Magnuson, and not Cullen, told Steed the express mail package
contained a check; and (3) the Steed affidavit did not show Cullen made any
misrepresentations in Texas or to a Texas resident.

 During the hearing on the special appearances, appellants's attorney, in
addressing the court, indicated that Steed's affidavit contained hearsay. However,
there was no specific objection presented to, or ruling requested from, the trial court. 
Therefore, no error, if any, is preserved. See Tex. R. App. P. 33.1.

 Steed's affidavit alleges that Cullen promised to send payment, prepared an
empty package, and had Magnuson give the package to Poly-Line's agent, Steed, with
the intention that the empty package be delivered to Poly-Line's Houston office. The
affidavit also alleges the payment which Steed and Poly-Line expected Cullen would
mail was required for the release of the additional shipments of resin. We conclude
these facts demonstrate Cullen directed her actions toward Texas, and she could have
foreseen that her promise to send payment and her failure to send payment would
adversely affect Poly-Line and its business in Texas. See Mem'l Hosp. Sys., 835
S.W.2d at 650.

 In Steed's affidavit, he also stated Frawley agreed to pay Poly-Line for the
outstanding invoices, but failed to do so. Steed alleged Frawley did not return Poly-Line's telephone calls about this agreement and the unpaid balances. Contracting
with a Texas resident, standing alone, does not satisfy the minimum contacts
requirement. Preussag Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 125 (Tex.
App.--Houston [1st Dist.] 2000, pet. dism'd w.o.j.); Magnolia Gas Co. v. Knight
Equip. & Mfg. Corp., 994 S.W.2d 684, 691 (Tex. App.--San Antonio 1998, no pet.). 
However, we consider the evidence of Frawley's oral promise to Steed and Poly-Line
that he would remit payment in light of the entire record, including the evidence of
the close business, personal, and familial relationships between Cullen, Frawley,
Frawley Trading and Polyliner and the allegations that Cullen's actions constituted
fraud. (4) 

 The record is replete with evidence of the close business relationship between
Frawley Trading and Polyliner. Cullen's testimony and Steed's affidavit showed: (1)
Frawley Trading and Polyliner jointly leased railroad track space; (2) they shared
office space in Illinois; (3) Cullen was majority shareholder of Polyliner and an
officer of both corporations; (4) Frawley was majority shareholder of Frawley
Trading and an officer of both corporations; and (5) the corporations had significant
business dealings with each other. As evidence of the business between Frawley
Trading and Polyliner, Steed and Poly-Line presented documentary evidence
including several promissory notes. Polyliner purchased goods, including resin from
Poly-Line, and "sold" the goods to Frawley Trading in forgiveness of outstanding
debt under the notes. Cullen testified that, at one point, Polyliner owed Frawley
Trading over $1,300,000. Steed and Poly-Line contend Frawley Trading's and
Polyliner's course of business dealings allowed Frawley Trading to accumulate a net
worth over $3,000,000, while Polyliner had debts exceeding $1,000,000.

 A civil conspiracy between a resident and a nonresident, standing alone, cannot
be the basis for jurisdiction. Nat'l Indus. Sand Ass'n v. Gibson, 897 S.W.2d 769, 772
(Tex. 1995). (5) Frawley must have individual contacts with Texas in order for an
exercise of jurisdiction to be permissible. Id. Here, Frawley's acts show more than
mere involvement in Cullen's allegedly fraudulent activities; Frawley's oral promise
to pay Steed and Poly-Line constituted a direct act toward Texas and a Texas resident
in furtherance of the alleged fraud. We conclude Frawley, like Cullen, should have
foreseen the direct economic impact to Poly-Line, and he could have reasonably
expected to be haled into a Texas court based on his actions. We also conclude that,
based on the record and in light of the close business relationships and course of
dealing between the defendant corporations, the appellants's family relationship, and
the appellants's positions as officers of each corporation and majority shareholders
in the corporations, the trial court did not commit error in denying Cullen's and
Frawley's special appearances.

 Because we hold the exercise of specific jurisdiction was proper, we do not
address the appellant's claims that an exercise of general jurisdiction was improper. 

Conclusion

 We conclude Cullen and Frawley did not negate all bases for specific
jurisdiction, and we hold the trial court may properly exercise specific jurisdiction
over both Cullen and Frawley.

 We affirm.


 Davie L. Wilson

 Justice


Panel consists of Justices Hedges, Jennings, and Wilson. (6)

Do not publish. Tex. R. App. P. 47.4.
1. - 
2. [2] Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon Supp. 2002).

3. [3] U.S. Const. amend. XIV, § 1.
4. 
 
 - 
 
5. 
 
 
 
 

6.