**BLAIR COMMUNICATIONS, INC., Appellant,**

v.

**SES SURVEY EQUIPMENT SERVICES, INC., Appellee.**

No. 01–01–00237–CV.

Court of Appeals of Texas, Houston (1st Dist.).

July 11, 2002.

---

Harold D. Hammett, Sandra Allison, Fort Worth, for Appellant.

Sheila Haddock, Barlow, Todd, Jordan & Jones, L.L.P., Houston, John Holmes Atwood, Levin & Atwood, Katy, for Appellee.

Panel consists of Chief Justices SCHNEIDER and Justices TAFT and RADACK.

## OPINION

MICHAEL SCHNEIDER, Chief Justice.

This is an interlocutory appeal[1] from the trial court's denial of a special appearance filed by the non-resident defendant/appellant, Blair Communications, Inc. Blair contends the trial court erred in

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(7) (Vernon Supp.2002).

denying its special appearance because it did not have sufficient minimum contracts with Texas to establish personal jurisdiction in the Texas courts. We reverse.

## Standard of Review

The plaintiff has the initial burden of pleading sufficient allegations to bring the nonresident defendant within the provisions of the Texas long-arm statute. *See Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 633 (Tex.App.-Dallas 1993, writ denied). The burden of proof then shifts to the nonresident defendant to negate all possible grounds for personal jurisdiction. *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex.1985); *Garner v. Furmanite Australia Pty., Ltd.*, 966 S.W.2d 798, 802 (Tex.App.-Houston [1st Dist.] 1998, pet. denied). Thus, the defendant must present evidence negating any jurisdictional facts alleged by the plaintiff with which the defendant takes issue. *See Temperature Sys., Inc. v. Bill Pepper, Inc.*, 854 S.W.2d 669, 673 (Tex. App.-Dallas 1993, writ dism'd by agr.). Existence of personal jurisdiction is a question of law, but that determination must sometimes be preceded by the resolution of underlying factual disputes. *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex.App.-Houston [1st Dist.] 2000, pet. dism'd w.o.j.); *James v. Ill. Cent. R.R. Co.*, 965 S.W.2d 594, 596 (Tex.App.-Houston [1st Dist.] 1998, no pet.). Although findings of fact are not required, *see* Tex.R.App. P. 28.1, if the trial court does not file findings of fact in a special appearance, all questions of fact are presumed to support the judgment. *Ace Ins. Co. v. Zurich Am. Ins. Co.*, 59 S.W.3d 424, 427 (Tex.App.-Houston [1st Dist.] 2001, pet. denied); *Old Kent Leasing Servs. Corp. v. McEwan*, 38 S.W.3d 220, 225–26 (Tex.App.-Houston [14th Dist.]

2001, no pet.). Where a complete statement of facts appears in the record, however, these implied findings are not conclusive and an appellant may challenge the sufficiency of the evidence to support the implied finding. *Shapolsky v. Brewton*, 56 S.W.3d 120, 128 (Tex.App.-Houston [14th Dist.] 2001, pet. filed); *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex.1989). Thus, in this case, we review the trial court's application of law de novo and review the facts for sufficiency. *See M.G.M. Grand Hotel, Inc. v. Castro*, 8 S.W.3d 403, 408 (Tex.App.-Corpus Christi 1999, no pet.).

## Personal Jurisdiction

Rule of Civil Procedure 120a allows a party to appear specially, without making a general appearance, to object to the court's exercise of jurisdiction over it, "on the ground that such party or property is not amenable to process issued by the courts of this State." Tex.R. Civ. P. 120a; *Abacan Technical Servs. Ltd. v. Global Marine Int'l Servs. Corp.*, 994 S.W.2d 839, 843 (Tex.App.-Houston [1st Dist.] 1999, no pet.). The words "not amenable to process" mean that the special appearance is available solely to establish that the Texas court cannot, under the federal and state constitutions and the applicable state statutes, validly obtain jurisdiction over the person or property of the defendant with regard to the cause of action pled. *GFTA Trendanalysen B.G.A. Herrdum GMBH & Co., K.G. v. Varme*, 991 S.W.2d 785, 786 (Tex.1999).

A court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Fourteenth Amendment's due process clause[2] and the

2.  U.S. Const. amend. XIV, § 1.

Texas long-arm statute[3] are satisfied. *CSR, Ltd. v. Link,* 925 S.W.2d 591, 594 (Tex.1996) (orig.proceeding); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 413–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404 (1984). The Texas long-arm statute reaches as far as the federal and state constitutional guarantees of due process allow. *Garner,* 966 S.W.2d at 802; *CSR,* 925 S.W.2d at 594. Therefore, the requirements of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction comports with federal due process limitations. *Garner,* 966 S.W.2d at 802; *CSR,* 925 S.W.2d at 594.

■■■ The United States Constitution permits a state to exert personal jurisdiction over a nonresident defendant only if the defendant has some minimum, purposeful contacts with the state, and the exercise of jurisdiction will not offend traditional notions of fair play and substantial justice. *Dawson–Austin v. Austin,* 968 S.W.2d 319, 326 (Tex.1998). A nonresident defendant must have purposefully established such minimum contacts with the forum that it could reasonably anticipate being sued there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). If the nonresident defendant has purposefully availed itself of the privileges and benefits of conducting business in a state, it has sufficient contacts to confer personal jurisdiction. *Id.* at 475, 105 S.Ct. 2174.

■■■ A defendant's contacts with a forum can give rise to either general or specific jurisdiction. *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 227 (Tex. 1991). General jurisdiction is present when a defendant's contacts are continuous and systematic, allowing the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Id.* at 228. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. *Id.* Specific jurisdiction, however, is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum. *Id.* at 227. The parties in this case concede that no general jurisdiction is involved. The sole issue before this Court is whether Texas may exercise specific jurisdiction over Blair.

■■■ When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the defendant, the forum, and the litigation. *Memorial Hosp. Sys. v. Fisher Ins. Agency, Inc.,* 835 S.W.2d 645, 650 (Tex.App.-Houston [14th Dist.] 1992, no writ). Specific jurisdiction is established where the alleged liability arises from activity conducted within, or "purposefully directed" toward, the forum state and involves a less demanding minimum contacts analysis than general jurisdiction. *CSR,* 925 S.W.2d at 595.

### Evidence of Contacts with Texas

Thus, we review Blair's contacts with Texas to determine whether they are sufficient to establish specific jurisdicion.

The plaintiff, SES Survey Equipment Service, Inc. (hereinafter, SES) is a Texas corporation with its principal place of business in Houston, Texas. Blair, the defendant, is a Delaware corporation and maintains its principal place of business in Auburn, New York. Blair does not have an office in Texas, nor does it have a des-

---

**3.** Tex. Civ. Prac. & Rem.Code Ann. § 17.042    (Vernon 1997).

ignated agent for service of process in Texas.

In 1998, Joe Robinson, an engineer from New York, contacted SES in Houston to ask about leasing some seismic equipment. Mr. Robinson was planning to have his geological survey financed by the University of Syracuse, in the State of New York. After several months of negotiations, discussions between Robinson and SES ceased when Robinson became ill.

After Robinson's health improved, he again contacted SES to find out whether the seismic equipment was still available. During the initial conversations with Robinson, SES assumed that the University of Syracuse would still be funding the project. SES soon learned that Blair, not the University of Syracuse, would be paying for the seismic equipment.

The issue of whether Blair called SES first, or whether SES called Blair is disputed. Joseph Solon, Blair's president, testified in his affidavit that someone from SES called him to discuss leasing the seismic equipment. However, Paul Hewson, SES's president, testified at the special appearance hearing that Solon must have called SES because Hewson did not have a phone number for Solon. Although there are no findings of fact, the trial court stated on the record that Blair "initiated the contact that led to the contract ..." This implied finding is supported by legally and factually sufficient evidence, and we will accept it as true.

On July 9, 1999, SES faxed a six-page proposal to Blair which stated, "the attached equipment quotation/terms and conditions will be the basis of the contract between our companies." The next day, SES mailed a hard copy of the July 9 proposal, plus attached a four-page document entitled "Conditions of Hire," which included a forum selection clause designating Texas as the chosen forum.[4]

On July 13, SES faxed Blair an invoice for a $10,000 deposit "as per our quotation to Blair Communications dated July 9th."

On July 14, Blair mailed its purchase order and a $10,000 check from New York to SES in Houston. The purchase order was a "project deposit as agreed for geophysical survey equipment and engineer as per our quote dated July 9, 1999."

On July 25, 1999, the seismic equipment was air freighted from London to New York, and SES invoiced Blair for the shipping expenses. A dispute arose over the quality of the equipment, and Blair refused to pay. SES filed this suit in Harris County for payment it claimed it was due under the contract.

In sum, Blair's contacts with Texas include: (1) an implied finding relating to Solon's telephone call to Hewson to discuss the lease of the seismic equipment, which had been previously discussed between Joe Robinson and Hewson; and (2) Blair's mailing the $10,000 check to Texas.

**4.** We note that SES's pleadings do not allege the forum selection clause as a basis for jurisdiction over Blair. Similarly, neither in the brief before us, or in the trial court below, does SES argue that the forum selection clause is a valid consent to jurisdiction by Blair. Although SES refers to the clause as one of Blair's "minimum contacts" with Texas, it does not suggest that the forum selection clause, standing alone, is a valid basis for asserting personal jurisdiction over Blair, nor does it cite a single forum selection clause case. Furthermore, the trial court indicated on the record that it was basing its decision on the fact that Blair initiated the contact with Texas. There is nothing in the record to suggest that the trial court considered the validity of the forum selection clause or based its decision on it in any way. Similarly, we do not decide whether there was a "meeting of the minds" as to the forum selection clause, or whether it is valid and enforceable.

### Law & Analysis

██ Blair contends that this case is controlled by the Dallas court's decision in *3-D Elec. Co., Inc. v. Barnett Constr. Co.,* 706 S.W.2d 135 (Tex.App.-Dallas 1986, writ ref'd n.r.e.). In *3-D Electric,* a third party, who was related to a Tennessee defendant, called the Texas plaintiff regarding electrical work to be done on a motel being built in Colorado. *Id.* at 137. The Tennessee defendant, a general contractor, followed up this initial contact by calling and sending building plans to the plaintiff. *Id.* The plaintiff went to Colorado to discuss the project, and the parties entered into an oral contract. *Id.* After the motel was completed, the plaintiff sent a bill to the defendant and a fee dispute arose. *Id.* The court noted that the oral contract was initiated by the third party's call to the plaintiff in Texas, and was followed by the defendant's calls and faxes to Texas. *Id.* at 141, 142. The court also noted that the plaintiff did some of the preliminary design work in Texas. *Id.* at 142. Nevertheless, the court held that the Tennessee defendant's contacts with Texas, which included a contract with a Texas resident, price negotiations by telephone with the Texas resident, and performance of the contract in Colorado, were insufficient to establish specific jurisdiction over the Tennessee defendant. *Id.* at 143–144.

SES argues that this case is governed by *Bissbort v. Wright Printing & Publ'g Co.,* 801 S.W.2d 588 (Tex.App.-Fort Worth 1991, no writ). In *Bissbort,* an Iowa defendant contacted a Texas plaintiff to see if the plaintiff would be interested in purchasing a printing press. *Id.* at 588. The plaintiff traveled to Iowa to discuss the transaction, and after returning to Texas, mailed a proposal to the defendant in Iowa. *Id.* The defendant returned the signed contract to Texas and wired $51,230, which was 40% of the purchase price, to Texas. *Id.* The plaintiff sued for the remainder of the contract price. *Id.* Without citing any authority, the court of appeals held that by (1) initiating negotiations with the plaintiff, (2) executing and returning a contract that required payment in Texas, and (3) wiring the payment to Texas, the defendant "took advantage of the protection from misappropriation provided by Texas law and implicitly expressed confidence in Texas courts to provide a remedy if misappropriation occurred." *Id.* at 589.

The present case is more analogous to *3-D Electric* rather than *Bissbort.* As in *3-D Electric,* the parties in this case were initially put in contact with each other by a third party, the out-of-state defendant followed up on the third party's initial contact, the parties subsequently entered into a contract, which was performed outside of Texas, and payment was made by sending a check to Texas.

██ Merely contracting with a Texas resident does not satisfy the minimum contacts requirement. *American Type Culture Collection, Inc. v. Coleman,* 26 S.W.3d 37, 43–44 (Tex.App.-Houston [1st Dist.] 2000, pet. granted); *Magnolia Gas Co. v. Knight Equip. & Mfg. Corp.,* 994 S.W.2d 684 (Tex.App.-San Antonio 1998, no pet.). Nor is jurisdiction justified by the single fact that a contract is payable in Texas. *J.D. Fields & Co. v. W.H. Streit, Inc.,* 21 S.W.3d 599, 604 (Tex.App.-Houston [1st Dist.] 2000, no pet.).

We find the *Fields* case to be distinguishable, but instructive. In *Fields,* the Texas plaintiff contacted the Pennsylvania defendant by faxing its price list. *Id.* at 601. The defendant forwarded a purchase order to Texas, but the plaintiff refused to extend credit to the defendant. *Id.* The defendant's president called the plaintiff and offered to personally guarantee the debt. *Id.* The parties entered into an

agreement and the steel pilings ordered by the defendant were shipped from England to its project site in New Jersey. *Id.* The Texas plaintiff sued when the defendant failed to pay the entire balance due under the contract. *Id.* This Court noted that neither a contract with a Texas resident, nor a payment made to Texas is sufficient to justify personal jurisdiction over a non-resident defendant. *Id.* at 604. However, the Court found that the most critical factor in the case was that the nonresident defendant's president had guaranteed the debt to induce the Texas plaintiff to enter into the contract. *Id.* This Court held that such a guarantee was sufficient to establish minimum contacts with Texas for a suit arising out of the contract, which was the subject of the guarantee. *Id.*

In the present case, there is no issue of a guarantee used to induce a Texas defendant to enter a contract. We have simply a phone call into Texas to initiate a contract, a subsequent contract with a Texas resident, and payment forwarded to Texas. Blair never traveled to Texas, it received no goods from Texas, it shipped nothing into Texas, and it made no profits from Texas. The purpose of the contract was to obtain equipment, which was located in England, for use on a seismic survey, which was being conducted in New York.

The trial court, in this case, placed a great deal of emphasis on the fact that Blair initiated the contact with SES, which resulted in a contract between the parties. We do not believe that there can be such a bright-line test for evaluating personal jurisdiction. "While purposeful contact with the forum state is an important component of the minimum contacts analysis, equally important is the requirement that there be a substantial connection between the nonresident defendant and the forum state arising from such contact." *Ring Power Sys. v. Int'l De Comercio Y Consultoria,*

S.A., 39 S.W.3d 350, 354 (Tex.App.-Houston [14th Dist.] 2001, no pet.). We do not believe that initiating contract discussions with a Texas resident, and subsequently entering into a contract, in addition to making payment in Texas, are sufficient contacts with Texas when the entire substance of the contract is performed outside the state. *See Barnstone v. Congregation Am Echad,* 574 F.2d 286, 288–89 (5th Cir. 1978) (holding contract initiated by Maine defendant with Texas resident, which was negotiated in Maine and through the mail and performed in Maine not sufficient "minimum contact" to establish specific jurisdiction in Texas).

Accordingly, we reverse the order denying Blair's special appearance and render judgment dismissing the claims against it.