Opinion issued July 11, 2002 












 



In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00237-CV






BLAIR COMMUNICATIONS, INC., Appellant


V.


SES SURVEY EQUIPMENT SERVICES, INC., Appellee





On Appeal from the 334th District Court

Harris County, Texas

Trial Court Cause No. 2000-8838





O P I N I O N


 This is an interlocutory appeal (1) from the trial court's denial of a special
appearance filed by the non-resident defendant/appellant, Blair Communications, Inc. 
Blair contends the trial court erred in denying its special appearance because it did
not have sufficient minimum contracts with Texas to establish personal jurisdiction
in the Texas courts. We reverse.

Standard of Review


 The plaintiff has the initial burden of pleading sufficient allegations to bring
the nonresident defendant within the provisions of the Texas long-arm statute. See
Hotel Partners v. KPMG Peat Marwick, 847 S.W.2d 630, 633 (Tex. App.--Dallas
1993, writ denied). The burden of proof then shifts to the nonresident defendant to
negate all possible grounds for personal jurisdiction. Kawasaki Steel Corp. v.
Middleton, 699 S.W.2d 199, 203 (Tex. 1985); Garner v. Furmanite Australia Pty.,
Ltd., 966 S.W.2d 798, 802 (Tex. App.--Houston [1st Dist.] 1998, pet. denied). Thus,
the defendant must present evidence negating any jurisdictional facts alleged by the
plaintiff with which the defendant takes issue. See Temperature Sys., Inc. v. Bill
Pepper, Inc., 854 S.W.2d 669, 673 (Tex. App.--Dallas 1993, writ dism'd by agr.). 
Existence of personal jurisdiction is a question of law, but that determination must
sometimes be preceded by the resolution of underlying factual disputes. Preussag
Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex. App.--Houston [1st Dist.]
2000, pet. dism'd w.o.j.); James v. Ill. Cent. R.R. Co., 965 S.W.2d 594, 596 (Tex.
App.--Houston [1st Dist.] 1998, no pet.). Although findings of fact are not required,
see Tex. R. App. P. 28.1, if the trial court does not file findings of fact in a special
appearance, all questions of fact are presumed to support the judgment. Ace Ins. Co.
v. Zurich Am. Ins. Co., 59 S.W.3d 424, 427 (Tex. App.--Houston [1st Dist.] 2001,
pet. denied); Old Kent Leasing Servs. Corp. v. McEwan, 38 S.W.3d 220, 225-26(Tex.
App.--Houston [14th Dist.] 2001, no pet.). Where a complete statement of facts
appears in the record, however, these implied findings are not conclusive and an
appellant may challenge the sufficiency of the evidence to support the implied
finding. Shapolsky v. Brewton, 56 S.W.3d 120, 128 (Tex. App.--Houston [14th
Dist.] 2001, pet. filed); Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex.1989). 
Thus, in this case, we review the trial court's application of law de novo and review
the facts for sufficiency. See M.G.M. Grand Hotel, Inc. v. Castro, 8 S.W.3d 403, 408
(Tex. App.--Corpus Christi 1999, no pet.).

Personal Jurisdiction

 Rule of Civil Procedure 120a allows a party to appear specially, without
making a general appearance, to object to the court's exercise of jurisdiction over it,
"on the ground that such party or property is not amenable to process issued by the
courts of this State." Tex. R. Civ. P. 120a; Abacan Technical Servs. Ltd. v. Global
Marine Int'l Servs. Corp., 994 S.W.2d 839, 843 (Tex. App.--Houston [1st Dist.]
1999, no pet.). The words "not amenable to process" mean that the special
appearance is available solely to establish that the Texas court cannot, under the
federal and state constitutions and the applicable state statutes, validly obtain
jurisdiction over the person or property of the defendant with regard to the cause of
action pled. GFTA Trendanalysen B.G.A. Herrdum GMBH & Co., K.G. v. Varme,
991 S.W.2d 785, 786 (Tex. 1999). 

 A court may assert personal jurisdiction over a nonresident defendant only if
the requirements of both the Fourteenth Amendment's due process clause (2) and the
Texas long-arm statute (3) are satisfied. CSR, Ltd. v. Link, 925 S.W.2d 591, 594 (Tex.
1996) (orig. proceeding); Helicopteros Nacionales de Colombia, S.A. v. Hall, 466
U.S. 408, 413-14, 104 S. Ct. 1868, 1871-72 (1984). The Texas long-arm statute
reaches as far as the federal and state constitutional guarantees of due process allow. 
Garner, 966 S.W.2d at 802; CSR, 925 S.W.2d at 594. Therefore, the requirements
of the Texas long-arm statute are satisfied if the exercise of personal jurisdiction
comports with federal due process limitations. Garner, 966 S.W.2d at 802; CSR, 925
S.W.2d at 594.

 The United States Constitution permits a state to exert personal jurisdiction
over a nonresident defendant only if the defendant has some minimum, purposeful
contacts with the state, and the exercise of jurisdiction will not offend traditional
notions of fair play and substantial justice. Dawson-Austin v. Austin, 968 S.W.2d
319, 326 (Tex. 1998). A nonresident defendant must have purposefully established
such minimum contacts with the forum that it could reasonably anticipate being sued
there. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474; 105 S. Ct. 2174, 2183
(1985). If the nonresident defendant has purposefully availed itself of the privileges
and benefits of conducting business in a state, it has sufficient contacts to confer
personal jurisdiction. Id. at 475.

 A defendant's contacts with a forum can give rise to either general or specific
jurisdiction. Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,
815 S.W.2d 223, 227 (Tex. 1991). General jurisdiction is present when a defendant's
contacts are continuous and systematic, allowing the forum to exercise personal
jurisdiction over the defendant even if the cause of action did not arise from or relate
to activities conducted within the forum state. Id. at 228. General jurisdiction
requires a showing that the defendant conducted substantial activities within the
forum, a more demanding minimum contacts analysis than for specific jurisdiction. 
Id. Specific jurisdiction, however, is established if the defendant's alleged liability
arises from or is related to an activity conducted within the forum. Id. at 227. The
parties in this case concede that no general jurisdiction is involved. The sole issue
before this Court is whether Texas may exercise specific jurisdiction over Blair.

 When specific jurisdiction is asserted, the minimum contacts analysis focuses
on the relationship between the defendant, the forum, and the litigation. Memorial
Hosp. Sys. v. Fisher Ins. Agency, Inc., 835 S.W.2d 645, 650 (Tex. App.--Houston
[14th Dist.] 1992, no writ). Specific jurisdiction is established where the alleged
liability arises from activity conducted within, or "purposefully directed" toward, the
forum state and involves a less demanding minimum contacts analysis than general
jurisdiction. CSR, 925 S.W.2d at 595.

Evidence of Contacts with Texas

 Thus, we review Blair's contacts with Texas to determine whether they are
sufficient to establish specific jurisdicion.

 The plaintiff, SES Survey Equipment Service, Inc. (hereinafter, SES) is a Texas
corporation with its principal place of business in Houston, Texas. Blair, the
defendant, is a Delaware corporation and maintains its principal place of business in
Auburn, New York. Blair does not have an office in Texas, nor does it have a
designated agent for service of process in Texas.

 In 1998, Joe Robinson, an engineer from New York, contacted SES in Houston
to ask about leasing some seismic equipment. Mr. Robinson was planning to have
his geological survey financed by the University of Syracuse, in the State of New
York. After several months of negotiations, discussions between Robinson and SES
ceased when Robinson became ill.

 After Robinson's health improved, he again contacted SES to find out whether
the seismic equipment was still available. During the initial conversations with
Robinson, SES assumed that the University of Syracuse would still be funding the
project. SES soon learned that Blair, not the University of Syracuse, would be paying
for the seismic equipment.

 The issue of whether Blair called SES first, or whether SES called Blair is
disputed. Joseph Solon, Blair's president, testified in his affidavit that someone from
SES called him to discuss leasing the seismic equipment. However, Paul Hewson,
SES's president, testified at the special appearance hearing that Solon must have
called SES because Hewson did not have a phone number for Solon. Although there
are no findings of fact, the trial court stated on the record that Blair "initiated the
contact that led to the contract . . ." This implied finding is supported by legally and
factually sufficient evidence, and we will accept it as true.

 On July 9, 1999, SES faxed a six-page proposal to Blair which stated, "the
attached equipment quotation/terms and conditions will be the basis of the contract
between our companies. The next day, SES mailed a hard copy of the July 9
proposal, plus attached a four-page document entitled "Conditions of Hire," which
included a forum selection clause designating Texas as the chosen forum. (4) 

 On July 13, SES faxed Blair an invoice for a $10,000 deposit "as per our
quotation to Blair Communications dated July 9th."

 On July 14, Blair mailed its purchase order and a $10,000 check from New
York to SES in Houston. The purchase order was a "project deposit as agreed for
geophysical survey equipment and engineer as per our quote dated July 9, 1999."

 On July 25, 1999, the seismic equipment was air freighted from London to New
York, and SES invoiced Blair for the shipping expenses. A dispute arose over the
quality of the equipment, and Blair refused to pay. SES filed this suit in Harris
County for payment it claimed it was due under the contract.

 In sum, Blair's contacts with Texas include: (1) an implied finding relating to
Solon's telephone call to Hewson to discuss the lease of the seismic equipment,
which had been previously discussed between Joe Robinson and Hewson; and (2)
Blair's mailing the $10,000 check to Texas.

Law & Analysis

 Blair contends that this case is controlled by the Dallas court's decision in 3-D
Elec. Co., Inc. v. Barnett Constr. Co., 706 S.W.2d 135 (Tex. App.--Dallas 1986, writ
ref'd n.r.e.). In 3-D Electric, a third party, who was related to a Tennessee defendant,
called the Texas plaintiff regarding electrical work to be done on a motel being built
in Colorado. Id. at 137. The Tennessee defendant, a general contractor, followed up
this initial contact by calling and sending building plans to the plaintiff. Id. The
plaintiff went to Colorado to discuss the project, and the parties entered into an oral
contract. Id. After the motel was completed, the plaintiff sent a bill to the defendant
and a fee dispute arose. Id. The court noted that the oral contract was initiated by the
third party's call to the plaintiff in Texas, and was followed by the defendant's calls
and faxes to Texas. Id. at 141, 142. The court also noted that the plaintiff did some
of the preliminary design work in Texas. Id. at 142. Nevertheless, the court held that
the Tennessee defendant's contacts with Texas, which included a contract with a
Texas resident, price negotiations by telephone with the Texas resident, and
performance of the contract in Colorado, were insufficient to establish specific
jurisdiction over the Tennessee defendant. Id. at 143-144.

 SES argues that this case is governed by Bissbort v. Wright Printing & Publ'g
Co., 801 S.W.2d 588 (Tex. App.--Fort Worth 1991, no writ). In Bissbort, an Iowa
defendant contacted a Texas plaintiff to see if the plaintiff would be interested in
purchasing a printing press. Id. at 588. The plaintiff traveled to Iowa to discuss the
transaction, and after returning to Texas, mailed a proposal to the defendant in Iowa. 
Id. The defendant returned the signed contract to Texas and wired $51,230, which
was 40% of the purchase price, to Texas. Id. The plaintiff sued for the remainder of
the contract price. Id. Without citing any authority, the court of appeals held that by
(1) initiating negotiations with the plaintiff, (2) executing and returning a contract
that required payment in Texas, and (3) wiring the payment to Texas, the defendant
"took advantage of the protection from misappropriation provided by Texas law and
implicitly expressed confidence in Texas courts to provide a remedy if
misappropriation occurred." Id. at 589.

 The present case is more analogous to 3-D Electric rather than Bissbort. As
in 3-D Electric, the parties in this case were initially put in contact with each other
by a third party, the out-of-state defendant followed up on the third party's initial
contact, the parties subsequently entered into a contract, which was performed outside
of Texas, and payment was made by sending a check to Texas.

 Merely contracting with a Texas resident does not satisfy the minimum
contacts requirement. American Type Culture Collection, Inc. v. Coleman, 26 S.W.3d
37, 43-44 (Tex. App.--Houston [1st Dist.] 2000, pet. granted); Magnolia Gas Co. v.
Knight Equip. & Mfg. Corp., (Tex. App.--San Antonio 1998, no pet.). Nor is
jurisdiction justified by the single fact that a contract is payable in Texas. J.D. Fields
& Co. v. W. H. Streit, Inc., 21 S.W.3d 599, 604 (Tex. App.--Houston [1st Dist.]
2000, no pet.).

 We find the Fields case to be distinguishable, but instructive. In Fields, the
Texas plaintiff contacted the Pennsylvania defendant by faxing its price list. Id. at
601. The defendant forwarded a purchase order to Texas, but the plaintiff refused to
extend credit to the defendant. Id. The defendant's president called the plaintiff and
offered to personally guarantee the debt. Id. The parties entered into an agreement
and the steel pilings ordered by the defendant were shipped from England to its
project site in New Jersey. Id. The Texas plaintiff sued when the defendant failed
to pay the entire balance due under the contract. Id. This Court noted that neither a
contract with a Texas resident, nor a payment made to Texas is sufficient to justify
personal jurisdiction over a nonresident defendant. Id. at 604. However, the Court
found that the most critical factor in the case was that the nonresident defendant's
president had guaranteed the debt to induce the Texas plaintiff to enter into the
contract. Id. This Court held that such a guarantee was sufficient to establish
minimum contacts with Texas for a suit arising out of the contract, which was the
subject of the guarantee. Id.

 In the present case, there is no issue of a guarantee used to induce a Texas
defendant to enter a contract. We have simply a phone call into Texas to initiate a
contract, a subsequent contract with a Texas resident, and payment forwarded to
Texas. Blair never traveled to Texas, it received no goods from Texas, it shipped
nothing into Texas, and it made no profits from Texas. The purpose of the contract
was to obtain equipment, which was located in England, for use on a seismic survey,
which was being conducted in New York.

 The trial court, in this case, placed a great deal of emphasis on the fact that
Blair initiated the contact with SES, which resulted in a contract between the parties. 
We do not believe that there can be such a bright-line test for evaluating personal
jurisdiction. "While purposeful contact with the forum state is an important
component of the minimum contacts analysis, equally important is the requirement
that there be a substantial connection between the nonresident defendant and the
forum state arising from such contact." Ring Power Sys. v. Int'l De Comercio y
Consultoria, S.A., 39 S.W.3d 350, 354 (Tex. App.--Houston [14th Dist.] 2001, no
pet.). We do not believe that initiating contract discussions with a Texas resident, and
subsequently entering into a contract, in addition to making payment in Texas, are
sufficient contacts with Texas when the entire substance of the contract is performed
outside the state. See Barnstone v. Congregation Am Echad, 574 F.2d 286, 288-89
(5th Cir. 1978) (holding contract initiated by Maine defendant with Texas resident,
which was negotiated in Maine and through the mail and performed in Maine not
sufficient "minimum contact" to establish specific jurisdiction in Texas).

 Accordingly, we reverse the order denying Blair's special appearance and
render judgment dismissing the claims against it.





 Michael Schneider

 Chief Justice


Panel consists of Chief Justices Schneider and Justices Taft and Radack.


Publish. Tex. R. App. P. 47.
1. § 

2. § 
3. § 
4. ' 
 
 
 
' " " 
 
 
 
 
 
 
 " "