**Opinion issued March 28, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-00911-CV

————————————

**HEDAYA HOME FASHIONS, INC., Appellant**

**V.**

**GARDEN RIDGE, L.P., Appellee**

On Appeal from the 215th Judicial District Court
Harris County, Texas
Trial Court Case No. 2011-32526

## MEMORANDUM OPINION

Appellant Hedaya Home Fashions, Inc., appeals the trial court's interlocutory order denying Hedaya's special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2012). Hedaya argues that the trial

court erred in determining that it had purposefully availed itself of the privilege of conducting business in Texas, and thus is subject to jurisdiction here, based on the evidence that Hedaya had sold thousands of quilts to Garden Ridge, L.P., a Texas company. The test for purposeful availment focuses not merely on the volume of goods shipped to Texas, but requires some "additional conduct" on the part of the defendant beyond merely delivering the product to the market of the forum state. *See Spir Star AG v. Kimich*, 310 S.W.3d 868, 873 (Tex. 2010). When title passes outside the state for the goods ultimately sold in Texas, a large volume of Texas sales is not itself sufficient to support a conclusion that Texas has jurisdiction over a nonresident defendant. *See Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 808 (Tex. 2002).

Because the contract under which this suit arises was initiated by Garden Ridge, and title to the goods in question passed outside of Texas, we reverse the trial court's denial of Hedaya's special appearance and render judgment dismissing the case against Hedaya for lack of personal jurisdiction.

### Background

Hedaya Home Fashions is a New York corporation that sells quilts and bedding materials. Garden Ridge is a Texas company that sells home and garden goods to retail consumers. After Garden Ridge buyers visited Hedaya's showroom in New York, Hedaya agreed to become a vendor for Garden Ridge.

2

Hedaya signed a contract with Garden Ridge, agreeing to abide by all terms and conditions specified by Garden Ridge for its purchase orders. Garden Ridge sent purchase orders to Hedaya's offices in New York and New Jersey, marked with billing and shipping addresses in Texas. Garden Ridge reserved the right to designate and approve any freight carriers for its shipments.

Between December 2008 and May 2010, Garden Ridge submitted six purchase orders to Hedaya for approximately 19,000 quilts at a price of around $270,000. The bills of lading prepared by Hedaya for five of the quilt shipments showed that the goods were shipped free on board ("FOB") at Hedaya's warehouse in New Jersey, meaning that ownership of the goods transferred in New Jersey. *See Am. Type Culture*, 83 S.W.3d at 807 (free on board means that title transfers at the FOB point). The bills of lading had three address boxes: one labeled "Ship From," indicating Hedaya's warehouse address in New Jersey; one labeled "Ship To," indicating the address of Garden Ridge's Dallas distribution center; and one labeled "Bill To," indicating Garden Ridge's Houston office address. Inside the "Ship From" box, a smaller FOB box was checked, indicating that the goods were shipped FOB in New Jersey. A small FOB box inside the "Ship To" box was left unmarked. In accordance with Garden Ridge's shipping guidelines, a third-party carrier transported the shipments from New Jersey to Garden Ridge in Dallas. Hedaya filled five of the purchase orders and shipped approximately 16,000 quilts,

3

for which Garden Ridge paid almost $220,000. But Hedaya did not fulfill the sixth purchase order for 3,500 quilts.

Garden Ridge withheld the $50,000 purchase price of the 3,500 quilts, and it brought this breach of contract suit against Hedaya, seeking to recover $100,000 in lost profits. Hedaya filed a special appearance, claiming that Texas courts lacked jurisdiction over it. In connection with the special appearance, the parties submitted affidavits and the transcript of the deposition of Nathan Hedaya, the company's president and sole owner. *See* TEX. R. CIV. P. 120a.

To meet its burden of alleging sufficient jurisdictional facts to bring Hedaya within reach of the Texas long-arm statute, Garden Ridge initially alleged that Hedaya had purposefully availed itself of the privileges and benefits of Texas law by engaging in business in Texas. According to Garden Ridge's allegations, Hedaya contracted in Texas with Garden Ridge and the contract was to be partially performed in Texas. To negate these allegations, Hedaya presented evidence showing that its interactions with Garden Ridge took place outside of Texas. In his affidavit, Nathan Hedaya stated that his company did not conduct business in Texas, did not advertise in Texas, had no employees in Texas, and signed all agreements with Garden Ridge outside of Texas. No one in his company had traveled to Texas in at least ten years.

4

In response to the special appearance, Garden Ridge presented its purchase orders that listed shipping and billing addresses in Texas and showed that Hedaya had sold close to 16,000 quilts to Garden Ridge over the course of a year and a half. In an affidavit, Garden Ridge's chief executive officer stated that Hedaya had delivered these goods to Garden Ridge in Texas, and all of them were sold to customers in Texas. Garden Ridge's vendor agreement required that it be signed by the vendor and returned to Garden Ridge in Texas. To support specific jurisdiction with respect to the alleged breach of contract, Garden Ridge noted that the remaining 3,500 quilts in the purchase order giving rise to the claim were to be delivered and sold in Texas. Garden Ridge attached its vendor contract, domestic shipping and packing manual, and copies of the six purchase orders it sent to Hedaya.

Finally, in reply, Hedaya introduced the transcript of Nathan Hedaya's deposition, in which he denied any contacts with Texas. In attached affidavits, buyers for Garden Ridge stated that Garden Ridge initially contacted Hedaya in its New York showroom. Hedaya also presented its bills of lading for the five fulfilled Garden Ridge purchase orders, which showed that the shipments were marked free on board in New Jersey and that a third-party carrier transported the goods to Texas.

5

After a hearing, the trial court denied the special appearance, finding that it had personal jurisdiction over Hedaya. Hedaya then brought this interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7).

**Analysis**

Texas courts may assert personal jurisdiction over a nonresident defendant if the Texas long-arm statute authorizes it and the exercise is consistent with federal and state constitutional due process guarantees. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007). The long-arm statute authorizes jurisdiction over a nonresident company that does business in this state, including activities such as "contract[ing] by mail or otherwise with a Texas resident" when "either party is to perform the contract in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042 (West 2008). Because the long-arm statute's broad doing-business language allows the statute to reach as far as federal constitutional requirements of due process will allow, the requirements of the long-arm statute are satisfied if an assertion of jurisdiction comports with federal due process guarantees. *Moki Mac*, 221 S.W.3d at 575. Personal jurisdiction is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software Belg., N.V. v.*

*Marchand*, 83 S.W.3d 789, 795 (Tex. 2002) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154 (1945)).

The touchstone of jurisdictional due process is purposeful availment. *Spir Star*, 310 S.W.3d at 873. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958). There are three aspects to purposeful availment. First, it is only the defendant's contacts with the forum that count, rather than the unilateral activity of another party or a third person. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985)). Second, the contacts must have been purposeful rather than random, fortuitous, or attenuated. *Id.* (citing *Burger King*, 471 U.S. at 475, 105 S. Ct. at 2183, and *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S. Ct. 1473, 1478 (1984)). Third, the nonresident defendant must have sought some benefit, advantage, or profit by "availing" itself of the jurisdiction, because personal jurisdiction is premised on notions of implied consent. *Id.* When a nonresident defendant structures its transactions to avoid the benefits and protections of a forum's laws, such as by ensuring that title passes outside the

7

forum, this legal fiction of consent no longer applies. *Am. Type Culture*, 83 S.W.3d at 808.

Minimum contacts analysis is further divided into specific jurisdiction and general jurisdiction. *See, e.g.*, *CSR Ltd. v. Link*, 925 S.W.2d 591, 595 (Tex. 1996). In either case, the defendant's contacts must be such that it should "reasonably anticipate" being haled into a court of the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S. Ct. 559, 567 (1980).

Whether a trial court has jurisdiction over a nonresident defendant is a mixed question of fact and law. *See BMC Software*, 83 S.W.3d at 794; *Glattly v. CMS Viron Corp.*, 177 S.W.3d 438, 445 (Tex. App.—Houston [1st Dist.] 2005, no pet.). The trial court's factual findings concerning the existence of personal jurisdiction may be reviewed for legal and factual sufficiency, while the legal conclusions based on those findings constitute a question of law subject to de novo review. *See BMC Software*, 83 S.W.3d at 794; *Glattly*, 177 S.W.3d at 445. When, as in this case, the trial court does not make findings of fact and conclusions of law to support its special appearance determination, "all facts necessary to support the judgment and supported by the evidence are implied." *BMC Software*, 83 S.W.3d at 795.

In a special appearance, "the plaintiff bears the initial burden to plead sufficient allegations to bring the nonresident defendant within reach of Texas's

long-arm statute." *See Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). Then the defendant bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. *Id.* The defendant can negate jurisdiction on a factual basis by presenting evidence that it has no contacts with Texas. *Id.* at 659. The defendant can also negate jurisdiction on a legal basis by showing that even if the plaintiff's alleged facts are true, (1) the evidence is legally insufficient to establish jurisdiction, (2) the defendant's contacts with Texas fall short of purposeful availment, (3) the claims do not arise from the contacts supporting specific jurisdiction, or (4) traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction. *Id.*

## I.     General jurisdiction

For general in personam jurisdiction to apply, a defendant must have "continuous and systematic" contacts with the state, which is a more demanding level of contact than what is required for specific jurisdiction. *Am. Type Culture*, 83 S.W.3d at 806. To support general jurisdiction, the defendant's forum activities must have been "substantial." *CSR*, 925 S.W.2d at 595; *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 114 (Tex. App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.). "Usually, 'the defendant must be engaged in longstanding business in the forum state, such as marketing or shipping products, or performing services or maintaining one or more offices there; activities that are

less extensive than that will not qualify for general in personam jurisdiction.'" *PHC-Minden, L.P. v. Kimberly-Clark Corp.*, 235 S.W.3d 163, 168 (Tex. 2007) (quoting 4 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1067.5 (2007)).

Hedaya lacks the substantial contacts with Texas that would support general jurisdiction. The company is incorporated under New York law, and its principal office and place of business are in New York and New Jersey. Hedaya does not have officers, distributors, employees, real property, or advertising contacts in Texas. No one from Hedaya has traveled to Texas for business in the past ten years. The affidavits of Garden Ridge buyers show that Garden Ridge contacted Hedaya in New York and sought out its products, rather than Hedaya initiating contact with Garden Ridge in Texas or otherwise soliciting business in Texas.

The primary evidence Garden Ridge presented to justify establishing general jurisdiction over Hedaya was the volume of goods that Hedaya shipped to Texas—approximately 16,000 quilts, for which Garden Ridge paid around $220,000. In response, Hedaya introduced copies of the bills of lading for those shipments, showing that the orders were marked free on board at Hedaya's New Jersey warehouse. The bills of lading also identified third-party carriers which transported the goods to Garden Ridge in Texas, in accord with Garden Ridge's shipment guidelines.

Unless it is unambiguous that the parties came to another agreement, the seller presumptively completes performance of a shipping contract by delivering the goods to a common carrier. *See* TEX. BUS. & COM. CODE ANN. § 2.504 (when a contract does not require delivery "at a particular destination," the seller's obligation is to put the goods in the possession of a carrier). Requiring "shipment to" a named destination, as Garden Ridge did in its purchase orders, does not demonstrate that the parties came to another agreement. *See generally* TEX. BUS. & COM. CODE ANN. § 2.503 cmt. 5 (West 2009) ("The seller is not obligated to deliver at a named destination and bear the concurrent risk of loss until arrival, unless he has specifically agreed so to deliver or the commercial understanding of the terms used by the parties contemplates such delivery."); RICHARD A. LORD, WILLISTON ON CONTRACTS § 52:10 (4th ed. 2007) (noting that requiring "shipment to" a destination does not change the presumption that a seller's responsibility ends with delivery to the carrier, while requiring delivery "at" a destination specified by the buyer may have that effect).

The undisputed evidence is that for each of Hedaya's five completed quilt shipments to Garden Ridge, Hedaya delivered the quilts by placing them with a third-party carrier FOB New Jersey, and Garden Ridge has presented no evidence to suggest this was inconsistent with the parties' agreement. Unless "otherwise expressly agreed," the seller's performance was complete and title to the goods

11

passed to the buyer when the goods were placed in the possession of the common carrier at the FOB point. *See* TEX. BUS. & COM. CODE ANN. § 2.319(a)(1) (seller bears the expense and risk of putting goods into possession of the carrier under an FOB shipment term); *id.* § 2.401(b) (title passes "at the time and place of shipment" under contracts that do not require delivery "at destination"); *Polythane Sys., Inc. v. Marina Ventures Intern., Ltd.*, 993 F.2d 1201, 1205 n.6 (5th Cir. 1993) (applying Texas law). Thus, title to the goods passed to Garden Ridge in New Jersey, not in Texas where the goods ultimately arrived. Because it completed the purchase order contracts and title transferred outside of Texas, Hedaya never purposefully availed itself of Texas law during the course of its completed transactions with Garden Ridge.

In *American Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801 (Tex. 2002), the Supreme Court of Texas determined that more substantial contacts than shown in this case failed to support general jurisdiction over a nonresident defendant. A biological research materials company, incorporated in the District of Columbia with its principal place of business in Maryland, shipped all of its sales free on board in Maryland. *Am. Type Culture*, 83 S.W.3d at 807. Like Hedaya, the company was not authorized to do business in Texas and did not have offices, distributors, employees, real property, or a registered agent in Texas. *Id.* The company did make sales in Texas that annually generated approximately

12

$350,000 in revenue. It also stored patent material from Texas residents amounting to almost three percent of its total repository, purchased almost $378,000 worth of supplies from Texas vendors over a five-year period, and had its representatives attend five scientific conferences in Texas over a seven-year period. *Id.* at 807–08. The Court concluded these contacts were not continuous and systematic, and therefore they were insufficient to support general jurisdiction in Texas. *Id.* at 810.

The *American Type Culture* Court found dispositive the facts that the company did not advertise in Texas, had no physical presence in Texas, performed all its business services outside Texas, and constructed its contracts to ensure it did not benefit from Texas laws by shipping its sales free on board and entering into its contracts in Maryland. *See id.* at 810 (citing *CSR*, 925 S.W.2d at 595). Hedaya also does not advertise in Texas, has no physical presence here, enters into its contracts outside Texas, and sent its goods free on board such that title passed outside of Texas. Thus, like the business in *American Type Culture*, Hedaya's contacts with Texas are not continuous and systematic, and Hedaya is not subject to general jurisdiction in Texas.

The fact that Hedaya filled several purchase orders, rather than just one, does not change our conclusion that Hedaya is not subject to general jurisdiction in Texas. *See id.* at 806 ("It is the quality and nature of the defendant's contacts,

rather than their number, that is important to the minimum-contacts analysis."). "[E]ven occasional acts are not sufficient to support jurisdiction if, as here, their nature and quality and the circumstances of their commission create only an attenuated affiliation with the forum." *CMMC v. Salinas*, 929 S.W.2d 435, 439 (Tex. 1996) (internal quotation marks omitted, citing *Burger King*, 471 U.S. at 475 n.18, 105 S. Ct. at 2184 n.18, and *Int'l Shoe*, 326 U.S. at 318, 66 S. Ct. at 159); *see also Michiana*, 168 S.W.3d at 786 ("[S]tream-of-commerce jurisdiction requires a stream, not a dribble.").

Garden Ridge also relies on a provision of its undated standard terms and conditions, incorporated by reference into its agreement with Hedaya, which specifies that the parties' agreement will be governed by Texas law. These terms and conditions were appended to Garden Ridge's appellate brief though the document was not authenticated, offered into evidence in the trial court, or otherwise properly incorporated in the appellate record. *See generally* TEX. R. EVID. 901; TEX. R. APP. P. 34.5(c). The applicability of these terms was not conceded. When the document was presented to him at his deposition, Hedaya testified that he had never seen it. We thus cannot presume this document accurately reflects Garden Ridge's applicable terms and conditions at the time of the purchase order at issue, and the argument has not been appropriately preserved in the trial court or presented on appeal.

14

## II.    Specific jurisdiction

For a court to exercise specific jurisdiction over a nonresident defendant, the defendant must have purposefully directed its activities toward the forum state or purposely availed itself of the privileges and benefits of the forum's laws, and the cause of action must arise from or relate to those contacts.  *Touradji v. Beach Capital P'ship, L.P.*, 316 S.W.3d 15, 24 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004)); *see also Am. Type Culture*, 83 S.W.3d at 806.  To establish that a defendant purposefully availed itself of the forum's jurisdiction, it is not enough that a seller be aware that the stream of commerce will sweep the product into the forum state.  *Spir Star*, 310 S.W.3d at 873.  Instead, some "additional conduct" on the part of the seller must indicate "an intent or purpose to serve the market in the forum State."  *Id.* (quoting *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 112, 107 S. Ct. 1026, 1032 (1987)).   Examples of the kinds of additional conduct that are contemplated by this standard include: (1) designing the product for the market in the forum state, (2) advertising there, (3) establishing channels for providing regular advice to customers in the forum state, and (4) marketing the product through a distributor who has agreed to serve as the sales agent in the forum state.  *Id.*; *see also Moki Mac*, 221 S.W.3d at 579.

Because its cause of action arises from a dispute over the specific purchase orders that gave rise to Hedaya's contacts with Texas, Garden Ridge argues that Hedaya is subject to specific jurisdiction in Texas for this suit. Garden Ridge presented the purchase orders as evidence that Hedaya knew it was purposefully availing itself of the Texas market because all of the purchase orders had shipping and billing addresses in Texas. In an affidavit, Garden Ridge's chief executive officer stated that all of the goods identified by the purchase order in question were "to be delivered by Hedaya to Garden Ridge in Texas." Furthermore, Hedaya had signed a vendor agreement and contract accepting Garden Ridge's terms and conditions, and Hedaya transmitted this contract to Texas. Finally, Hedaya shipped around 16,000 quilts to Texas for sale in the Texas market. Garden Ridge argues that these shipments represent Hedaya's purposeful availment of the Texas market, not random or fortuitous contact.

None of these allegations, even taken as true, establish that Hedaya purposefully availed itself of the Texas market or the protections of its laws in regard to the unfulfilled purchase order. Instead, it was Garden Ridge that initiated contacts between itself and Hedaya, rather than any activity on the part of Hedaya purposefully directed towards the Texas forum. Garden Ridge reached out to Hedaya in New York and New Jersey, as shown by the affidavits of the Garden Ridge buyers. Garden Ridge sent buyers to Hedaya's New York showroom.

16

Garden Ridge sent its vendor agreement to Hedaya in New York.  The document was executed on behalf of Hedaya and returned to Garden Ridge.  Garden Ridge sent all of its purchase orders to Hedaya in New York and New Jersey.  Garden Ridge's unfulfilled purchase order required that the quilts be shipped and billed to Texas, but those facts are not enough to establish specific jurisdiction in Texas.  As the bills of lading for the other shipments show, Hedaya could still complete performance of that order without purposefully availing itself of Texas law by delivering the shipment FOB New Jersey.

As the Supreme Court of Texas has explained, "[s]ellers who reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to the jurisdiction of the latter in suits based on their activities." *Michiana*, 168 S.W.3d at 785 (quoting *Burger King*, 471 U.S. at 473, 105 S. Ct. at 2182) (internal quotation marks omitted).  But a defendant will not be haled into a jurisdiction solely based on the isolated or attenuated sales contacts initiated by the Texas resident.  *Compare id.* at 787 (unilateral activity on part of Texas resident who made single purchase cannot satisfy the requirement of contact with the forum state), *with Moki Mak*, 221 S.W.3d at 577–78 (nonresident defendant regularly advertised and solicited business in Texas through mass and targeted e-mail marketing).  "[I]t is well-settled . . . that there can be no purposeful availment in cases involving isolated sales solicited by consumers who proposed to

17

use the product in a state where the defendant does not conduct business." *Smart Call, L.L.C. v. Genio Mobile*, 349 S.W.3d 755, 761–62 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *see also C-Loc*, 993 S.W.2d at 479 (non-resident defendant entering into a sales agreement with Texas buyer does not establish purposeful availment in itself). Isolated contacts or single contracts may meet the purposeful-availment standard, but not when the relevant contacts take place outside of the forum state. *See Michiana*, 168 S.W.3d at 787.

The fact that the purchase orders informed Hedaya that its products would end up in Texas does not establish that Hedaya purposefully availed itself of Texas's jurisdiction. *See Spir Star*, 310 S.W.3d at 873. A nonresident defendant's mere knowledge that its sales will be delivered in Texas and be sold in the Texas market is insufficient to subject a defendant to the jurisdiction of Texas courts. *CMMC*, 929 S.W.2d at 439. "Merely contracting with a Texas resident does not satisfy the minimum contacts requirement." *Blair Communications, Inc. v. SES Survey Equip. Servs., Inc.*, 80 S.W.3d 723, 729 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (citing *Am. Type Culture*, 26 S.W.3d at 43–44). Likewise, "the single fact that a contract is payable in Texas" does not justify the finding of jurisdiction. *Id.* (citing *J.D. Fields & Co. v. W.H. Streit, Inc.*, 21 S.W.3d 599, 604 (Tex. App.—Houston [1st Dist.] 2000, no pet.)).

Accordingly, we conclude that Hedaya is not subject to specific jurisdiction in Texas.

## Conclusion

We reverse the trial court's denial of Hedaya's special appearance and we render judgment dismissing the claims against Hedaya for want of jurisdiction.


Michael Massengale
Justice

Panel consists of Justices Jennings, Bland, and Massengale.