Opinion filed May 10, 2007
















 
 
  
 
 







 
 
  
 
 




Opinion filed May 10, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00128-CV

                                                    __________

 

                   BASTIAN MATERIAL HANDLING, L.L.C., Appellant

 

                                                             V.

 

                                  STELLUTI
KERR, L.L.C., Appellee

 



 

                                        On
Appeal from the 132nd District Court

 

                                                          Scurry County, Texas

 

                                                   Trial
Court Cause No. 22,099

 



 

                                                                   O
P I N I O N

 

This is an interlocutory appeal[1]
from the trial court=s
order denying the special appearance of Bastian Material Handling, L.L.C.
(BMH), an Indiana-based company. 
Plaintiff Stelluti Kerr, L.L.C. (SK), a Texas
resident, sued BMH in Texas
asserting causes of action based upon a sworn account and quantum meruit.  BMH filed a special appearance pursuant to Tex. R. Civ. P. 120a in which it
asserted that the trial court lacked in personam jurisdiction over BMH.  After conducting a hearing, the trial court
denied BMH=s special
appearance.  We reverse and render. 








                                                                         Issues

BMH presents two issues for review.  In the first issue, BMH contends that the
order denying the special appearance is erroneous because, as a matter of law,
the trial court had no personal jurisdiction over BMH.  In its second issue, BMH argues that the
evidence was legally and factually insufficient to support the trial court=s order.  Under both of these issues, BMH asserts (1)
that it did not purposefully do some act or consummate some transaction in
Texas, (2) that the causes of action do not arise from and are not connected
with any acts or transactions of BMH in Texas, and (3) that the trial court=s assumption of jurisdiction over BMH
offends traditional notions of fair play and substantial justice.  

                                             Burden
of Proof and Standard of Review

The burdens of proof, standards of review, and
jurisdictional laws applicable to the filing of a special appearance by a
nonresident defendant are now well settled. 
See BMC Software Belgium,
N.V. v. Marchand, 83 S.W.3d 789, 793-96 (Tex. 2002). 
The plaintiff bears the initial burden of pleading sufficient
allegations to bring a nonresident defendant within the provisions of the Texas long‑arm
statute.  Id. at 793; see Tex. Civ. Prac. & Rem. Code Ann. ' 17.042 (Vernon 1997). 
A defendant challenging a Texas
court=s
personal jurisdiction over it must then negate the bases for jurisdiction.  BMC, 83 S.W.3d at 793.  

Whether a court has personal jurisdiction over a
defendant is a question of law.  Id. at 794. When
fact issues are present, we may review the trial court=s
findings of fact for legal and factual sufficiency, but we review de novo the
trial court=s conclusions
of law as a legal question.  Id.  When the trial court does not issue findings
of fact and conclusions of law with respect to its special appearance ruling,
all facts necessary to support the judgment and supported by the evidence are
implied.  Id.
at 795; Zac Smith & Co. v. Otis Elevator Co., 734 S.W.2d 662, 666 (Tex. 1987).  These implied findings are not conclusive and
may be challenged for legal and factual sufficiency on appeal when the clerk=s record and the reporter=s record are filed in the appellate
court.  BMC, 83 S.W.3d at
795.  Although no findings were requested
of or provided by the trial court in this case, the appellate record in this
case contains both the clerk=s
record and the reporter=s
record, and the material facts are not in dispute.  

 

 








                                                     Jurisdiction
Over Nonresidents

The Due Process Clause of the United States
Constitution and the Texas long‑arm
statute govern the exercise of jurisdiction by Texas courts over nonresident
defendants.  U.S. Const. amend. XIV; Tex. Civ. Prac. & Rem. Code Ann.
ch. 17 (Vernon 1997 & Supp. 2006). 
Section 17.042 of the long-arm statute permits Texas courts to exercise
jurisdiction over a nonresident defendant that Adoes
business in this state,@
including a nonresident who Acontracts
by mail or otherwise with a Texas resident and either party is to perform the
contract in whole or in part in this state.@  Section 17.042(1).  Section 17.042 extends Texas courts=
personal jurisdiction Aas
far as the federal constitutional requirements of due process will permit.@ 
BMC, 83 S.W.3d at 795 (quoting U‑Anchor Adver., Inc. v.
Burt, 553 S.W.2d 760, 762 (Tex.
1977)).  Consequently, we consider only
whether it is consistent with federal constitutional requirements of due
process for Texas
courts to assert in personam jurisdiction. 
Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 413‑14  (1984); Guardian Royal Exch. Assur., Ltd.
v. English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).  

The United States Supreme Court has divided the
due process requirements into two parts: 
(1) whether the nonresident defendant has Apurposefully
established minimum contacts@
with the forum state and, if so, (2) whether the exercise of jurisdiction
comports with Afair play
and substantial justice.@  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476
(1985); Guardian Royal, 815 S.W.2d at 226.  A nonresident defendant that has Apurposefully@
availed itself of the privileges and benefits of conducting business in the
foreign jurisdiction has sufficient contacts with the forum to confer personal
jurisdiction.  Burger King, 471 U.S. at 474‑76;
BMC, 83 S.W.3d at 795.  However, a
nonresident defendant should not be subject to a foreign court=s jurisdiction based upon random,
fortuitous, or attenuated contacts with the forum.  Burger King, 471 U.S. at 475; BMC,
83 S.W.3d at 795. 








A nonresident defendant=s
minimum contacts may give rise to either specific jurisdiction or general
jurisdiction.  Helicopteros, 466 U.S. at 413‑14;
BMC, 83 S.W.3d at 796.  Specific
jurisdiction is established when the cause of action arises out of or relates
to the nonresident defendant=s
contact with the forum.  Guardian
Royal, 815 S.W.2d at 227.  However,
the contact must have resulted from the nonresident defendant=s purposeful conduct and not the
unilateral activity of the plaintiff or others. 
Id.; see Helicopteros,
466 U.S.
at 417.  Merely contracting with an
out-of-state party does not necessarily establish sufficient minimum contacts
in the forum.  Burger King, 471 U.S. at
478.  General jurisdiction is established
when a nonresident defendant conducts substantial activities in the forum state
such that his contacts with the forum state are continuous and systematic, in
which case the forum may exercise personal jurisdiction over the nonresident
defendant even if the cause of action did not arise from or relate to activities
conducted within the forum state.  Guardian
Royal, 815 S.W.2d at 228. 

                                                              Jurisdictional
Facts

This case involves the assertion of specific
jurisdiction, and the facts relating to jurisdiction are largely
undisputed.  The record shows that the
relationship between SK and BMH began in 2001 
when Anthony Stelluti of SK solicited a bid from BMH regarding a project
in Kentucky.  SK is a Texas limited liability company that is Ain the business of assessing and meeting
the needs of customers in need of automated packaging lines.@ 
SK determines the type of equipment that its customers need and contacts
the manufacturers of such equipment.  SK
is compensated for its services by commissions received from the equipment
manufacturers.  BMH is an Indiana-based
limited liability company that is in the business of designing, selling, and
installing material-handling systems. 
BMH maintains offices in Indiana, Ohio, Michigan, Kentucky, Missouri, California, and Florida.  BMH has no office or registered agent in Texas.

Stelluti phoned BMH regional manager Mitch Smith
in Kentucky
and asked Smith if BMH would be interested in bidding on a job for one of SK=s customers.  Smith agreed to provide a quote for a
conveyor system and entered into a contract with SK on behalf of BMH.  The contract provided that BMH would pay SK a
commission of 15% on all parts, equipment, and services sold by BMH to SK=s then-undisclosed customer.  After the contract was signed, Stelluti sent
an initial concept layout drawing for the project with SK=s customer, Continental Mills.  BMH prepared a quote and sent the proposal to
SK and Continental Mills.  After its
proposal was accepted by SK and Continental Mills, BMH contacted Stelluti by
e-mail and fax with a few follow-up questions regarding the project specs.  Stelluti visited the project in Kentucky once, but all of his work was performed at SK=s offices in Texas.








BMH employee Jon Tilmon worked with
representatives of Continental Mills and developed the final design.  After Tilmon completed the final design, BMH
then installed the conveyor system for Continental Mills.  All of the work performed by BMH on the
Continental Mills project was done in Kentucky,
and all of the business related to the project took place in Kentucky
or Indiana.  BMH communicated with SK by e-mail or fax
and, as a professional courtesy, sent Stelluti copies of documents addressed to
Continental Mills regarding engineering, design, and materials for the
project.  Nobody from BMH came to Texas to perform any
work with SK or any work on the Continental Mills project.

                                                                        Analysis

SK argues that our focus should be on the contract
between it and BMH rather than on the contract with Continental Mills.  SK argues that virtually all of its
activities on the initial contract occurred in Texas;
that BMH took advantage of the efforts of a Texas
resident when it contracted with Continental Mills; and that, during the
Continental Mills project, BMH requested SK=s
aide and assistance knowing that SK=s
work would be performed in Texas.   Even if we focus entirely on the initial
contract, the record does not support the trial court=s
determination that BMH had minimum contacts with Texas
such that it purposefully availed itself of the privileges and benefits of
conducting business in Texas.

SK=s
position relies almost entirely on its own actions.  However, when determining if BMH had
sufficient minimum contacts with the state, we consider only BMH=s conduct.  Michiana Easy Livin= Country, Inc. v. Holten, 168
S.W.3d 777, 785 (Tex. 2005); see also
World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 298 (1980) (unilateral
activity cannot satisfy the requirement of contact with the forum state).  The proper inquiry is what is the
relationship between BMH, the forum, and the litigation.  See Blair Commc=ns, Inc. v. SES Survey Equip. Servs.,
Inc., 80 S.W.3d 723, 727 (Tex.
App.CHouston
[1st Dist.] 2002, no pet.) (contract negotiations with a Texas
resident and contract payments sent to Texas
are insufficient to establish jurisdiction when the entire substance of the
contract is performed outside the state). 









The initial contract itself is insufficient to
create jurisdiction.  Courts are required
to employ a Ahighly
realistic@ approach
that recognizes that a A>contract=
. . . is >ordinarily
but an intermediate step serving to tie up prior business negotiations with
future consequences which themselves are the real object of the business
transaction.=@ 
Burger King, 417 U.S.
at 479.  Moreover, the mere fact that it
communicated with SK in Texas and benefitted
from work SK performed in Texas
is insufficient to establish personal jurisdiction.  See 3-D Elec. Co. v. Barnett Constr. Co.,
706 S.W.2d 135, 143-44 (Tex. App.CDallas
1986, writ ref=d n.r.e.)
(nonresident=s phone
calls and faxes to Texas to solicit and
facilitate a contract with plaintiff, and plaintiff=s
preliminary design work done in Texas
did not establish personal jurisdiction).

BMH did nothing to purposefully avail itself of
the privileges and benefits of conducting business in Texas. 
When SK=s
unilateral actions are eliminated, BMH=s
contacts with the state were isolated and minimal.  Even these were almost entirely fortuitous
because they were communications with a specific individual.  SK has offices in Snyder,
Texas, and in Montreal, Canada.  SK directs our attention to three specific
e-mails from BMH.  Those e-mails could
have been accessed by SK as easily in Canada
as in Texas.  SK argues that BMH=s
e-mails required further action by it in Texas,
but in each case, BMH asked for additional information that ultimately would
have come from Continental Mills.  From
BMH=s perspective, SK=s efforts to acquire this additional
information and to forward it to BMH likewise could have occurred in either
office.

                                                                        Holding

The exercise of jurisdiction over BMH was improper
as a matter of law.  BMH=s first issue and its second issue
insofar as it relates to legal sufficiency are sustained.  We need not address the factual sufficiency
challenge.  Tex. R. App. P. 47.1. 
We reverse the trial court=s
order and render judgment dismissing the claims against BMH for want of
jurisdiction.

 

 

 

RICK STRANGE

JUSTICE

 

May 10, 2007

Panel
consists of:  Wright, C.J.,

McCall,
J., and Strange, J.











[1]See Tex. Civ. Prac. & Rem. Code Ann. ' 51.014(a)(7) (Vernon
Supp. 2006).